# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| STAN SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-CV-531-JED-FHM |
| | ) | |
| CITY OF SAND SPRINGS, OKLAHOMA, | ) ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

**I.    Background**

Plaintiff Stan Smith was employed by the City of Sand Springs, Oklahoma Fire Department beginning in 1996. He was promoted to the position of Fire Marshal in 2007. Plaintiff's job duties as Fire Marshal included conducting inspections of new and existing structures, reviewing plans for new construction, responding to fire emergencies, conducting investigations, and serving as a public information officer. Plaintiff is a member of the International Association of Fire Fighters (IAFF), and his employment with Defendant is subject to a collective bargaining agreement between the IAFF and the City of Sand Springs. During his tenure with the Fire Department, Plaintiff received strong performance evaluations. At the time he filed this lawsuit, Plaintiff had no disciplinary history.

Plaintiff's scheduled workday was from 8 a.m. to 5 p.m. Monday through Friday, with a one-hour unpaid meal period each day. The office was closed for an hour each day for lunch. On some days, Plaintiff conducted personal errands or personal business during his meal period. Plaintiff was required to carry his cell phone and to respond to phone calls and emergencies while on duty, including during his unpaid meal period. Plaintiff testified that, due to his workload, he

often worked in his office on his computer and phone during lunchtime. Plaintiff asserts that he worked through his unpaid meal period approximately three days per week, and therefore regularly worked more than forty hours per week but was not paid for the excess time that he worked during his meal periods. For several years, Plaintiff requested that the IAFF negotiate a change in his work schedule to an 8 a.m. to 4 p.m. schedule with a working lunch. However, his schedule was not changed.

In June 2017, Plaintiff spoke to Fire Chief Michael Wood about his schedule and told Wood that he had been working through lunch. Wood instructed Plaintiff to submit overtime requests for work he did during his meal period. Before this meeting, Plaintiff had never been instructed to keep track of whether he received a meal period or to submit an overtime request for work he did during his meal period.[1] Plaintiff did not submit any overtime requests for working during his meal period either before or after receiving this instruction from Wood. Plaintiff cannot identify any specific dates when he worked through his meal period.

On September 19, 2017, Plaintiff filed this lawsuit, alleging that the City failed to pay him overtime for all hours he worked in excess of forty per week at the rate of one and one-half times his regular rate of pay, in violation of the FLSA. Plaintiff's Complaint alleged that he worked nine hours per day, totaling forty-five hours per week, throughout his employment as Fire Marshal.

---

[1] Defendant has responded to some of the facts set forth in Plaintiff's Additional Statement of Undisputed Facts by making arguments or conclusory statements that do not properly address the fact asserted. The Court will consider those facts undisputed for the purpose of Defendant's motion for summary judgment. *See* Fed. R. Civ. P. 56(e)(2) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."); *see also* LCvR 56.1(c) ("All material facts set forth in the statement of the material facts of the movant may be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of material facts of the opposing party.").

Assistant City Manager Daniel Bradley learned about Plaintiff's FLSA lawsuit within a week after it was filed. Subsequently the City, led by Bradley, began investigating Plaintiff's overtime claim.

During the investigation, Human Resources Director Amy Fairchild discovered emails between Plaintiff and his outside employer relating to Plaintiff's work as a process server between 2014 and 2016. The City policy regarding off-duty employment in effect at that time stated that "City employees may take other jobs on a part-time or temporary basis if the employee's efficiency and attendance is maintained to the satisfaction of the Department Head or supervisor, there is no conflict of interest and the Department Head had approved such employment prior to the other employment. No employee shall engage in outside business or employment during regular schedule duty hours." (Doc. 52 at 4.) City policy also provided that "City equipment is for official use only and will never be used for personal reasons." (*Id.*) Deputy Fire Chief Justin Hall, who supervised Plaintiff, was aware of Plaintiff's outside employment at the time he worked as a process server and had not raised any concerns or issues about the outside employment or with Plaintiff's job's performance as Fire Marshal.

In October 2017, the City began investigating Plaintiff for the emails it found relating to his outside employment. Bradley testified that in most cases, an employee would be notified of an investigation into potential misconduct. (Bradley Dep. at 59:12-16, Doc. 48-9). However, the City did not notify Plaintiff of its investigation or interview him as part of the investigation, as it has done in previous cases. Wood was not informed that Bradley was investigating Plaintiff for alleged misconduct until December 19, 2017. Wood testified that he was surprised to learn that the City opened an investigation into Plaintiff because Wood had no reason to suspect him of doing anything that would warrant a formal investigation. (Wood Dep. at 103-04, Doc. 48). Bradley testified that the City would not have been investigating Plaintiff for misconduct if he had not filed

3

an FLSA Complaint. (Bradley Dep. at 100-01, Doc. 53-9 ("Q: Okay. So my – what I'm asking is you were investigating the FLSA complaint -- A: Right. And it opened up some other doors that need to be settled. Q: Okay. And so without the FLSA complaint you would not have even been looking into that issue, right? A. Probably not.")).

On December 27, 2017, the City placed Plaintiff on administrative leave and notified him that he was being proposed for termination. The City alleged Plaintiff violated various City policies relating to his outside work as a process server on eight separate dates (June 12, 2014; November 6, 2014; April 15, 2015; May 4, 2015; August 13, 2015; October 14, 2015; January 4, 2016; and April 12, 2016). Plaintiff was allowed to select one member of a three-person panel to conduct a pre-determination hearing. He chose Rick Portilloz, a Captain with the Sand Springs Fire Department. The other two panel members were John Mars, the City's Deputy Police Chief; and Patrick Boulden, a former attorney for the City of Tulsa. The hearing was conducted on January 26, 2018. On January 30, 2018, a panel majority consisting of Mars and Boulden issued written recommendation to sustain the proposed termination of Plaintiff's employment. (Doc. 46-6). The panel's written findings included seven specific incidents relating to Plaintiff's process-serving work that the panel found were in violation of City policy. Portilloz wrote a separate opinion discussing his reasons for dissenting from the panel majority. (Doc. 48-7).

On February 1, 2018, Defendant terminated Plaintiff's employment. Plaintiff filed a Second Amended Complaint on February 14, 2018, asserting claims for overtime compensation under the FLSA and unlawful retaliation in violation of the FLSA pursuant to 29 U.S.C. § 215(a)(3). (Doc. 31). Defendant moves for summary judgment on both claims. (Doc. 46). Plaintiff moves for partial summary judgment on his FLSA retaliation claim. (Doc. 48).

## II. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The courts thus determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The non-movant's evidence is taken as true, and all justifiable and reasonable inferences are to be drawn in the non-movant's favor. *Id.* at 255.

## III. Defendant's Motion for Summary Judgment

### A. FLSA Overtime

Under the FLSA, employees must be paid overtime compensation at the rate of one and one-half times the employee's regular rate of pay for hours in excess of forty per week. 29 U.S.C. § 207(a) (2010). Defendant contends Plaintiff's lunch periods were not compensable because they were *bona fide* meal periods under 29 C.F.R. § 785.19(a), which are not considered work time and are not compensable. In the Tenth Circuit, the "predominant-benefit" test applies to determine whether a meal period is *bona fide*. *See Castaneda v. JBS United States, LLC*, 819 F.3d 1237, 1253-54 (10th Cir. 2016). That test "asks whether the employee is primarily engaged in work-related duties during meal periods." *Id.* (internal alterations and citation omitted). "The inquiry whether an employee's time is spent 'predominately for the benefit of the employer' is 'highly individualized and fact-based.'" *Beasley v. Hillcrest Med. Ctr.*, 78 F. App'x 67, 70 (10th Cir.

2003) (unpublished) (citing *Pabst v. Okla. Gas & Elec. Co.*, 228 F.3d 1128, 1132) (10th Cir. 2000)).

Defendant asserts that Plaintiff's lunchtime was a *bona fide* meal period as a matter of law because he was free to leave the station for his lunch and regularly conducted personal errands and business. However, Defendant ignores testimony from Plaintiff and others that Plaintiff was sometimes called out on an incident during lunchtime, and Plaintiff's testimony that at other times he worked in his office through his lunch break answering phone calls and working on his computer. Plaintiff has testified that he worked through his meal period approximately three days per week. Defendant disputes Plaintiff's claim. Because Plaintiff did not record instances when he worked overtime through his meal period, there are no definitive records. As a result of this dispute of fact, the Court cannot find as a matter of law that Plaintiff always received a *bona fide* meal period.

Defendant also contends that it is not liable for overtime because it had a system in place for reporting overtime and Plaintiff failed to submit overtime requests for his meal periods. In *McKnight*, the Tenth Circuit held that where a plaintiff "admitted he was paid for the overtime hours he included on his time sheet, and that uncompensated time was the result of his failure to adequately record his time[,]" the failure to record claimed time "is fatal to a later claim for such, if the company has no reason to be aware of the overtime." *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1130 (10th Cir. 1998). However, under 29 C.F.R. § 785.11, "[w]ork not requested but suffered or permitted is work time." The Tenth Circuit has noted that "an employer who is armed with knowledge that an employee is working overtime cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation." *McGrath v. Cent. Masonry Corp.*, No. 07-1367,

276 F. App'x 797, 801 (10th Cir. May 1, 2007) (unpublished) (citing *Harvill v. Westward Commc'ns*, 433 F.3d 428, 411 (5th Cir. 2005)).[2]

Plaintiff presented evidence that Defendant had actual or constructive knowledge that Plaintiff was working through his meal period, despite Plaintiff's failure to submit overtime requests for such time. Plaintiff testified that his supervisors observed him working without compensation through his meal period. (Smith Decl. ¶ 8, Doc. 53-3). Hall, Plaintiff's immediate supervisor, was aware that there were days when Plaintiff did not go to lunch because he was called out on an incident. (Hall Dep. at 50:10-15, Doc. 53-12.) Additionally, it is undisputed that Plaintiff had requested the IAFF negotiate a change in his work schedule "for several years," and that the IAFF had requested a change in his schedule. It is also undisputed that in June 2017, Plaintiff told Wood that he wanted to change his schedule because he had been working through lunch, and that Wood instructed Plaintiff to submit overtime requests for work he did during his meal period. Defendant has not refuted that testimony with evidence that it had no knowledge of Plaintiff working through his meal period. Accordingly, there is sufficient evidence for a jury to consider whether Defendant had actual or constructive knowledge of any such overtime work.

Viewing the evidence in the light most favorable to Plaintiff, the Court concludes that there are genuine issues of fact as to whether Plaintiff is owed overtime compensation. Accordingly, Defendant is not entitled to summary judgment on Plaintiff's FLSA overtime claim.

**B. FLSA Retaliation**

Under the FLSA, an employer may not "[d]ischarge or in any other manner discriminate against an employee because such employee has filed any complaint or instituted or caused to be

---

[2] Under 10th Cir. R. 32.1, unpublished decisions are not precedential but may be cited for their persuasive value.

instituted any proceeding under or related to this Act . . . ." 29 U.S.C. § 215(a)(3). This section of the FLSA "protects conduct based on a good faith, although unproven, belief that the employer's conduct is illegal." *Love v. RE/MAX of Am. Inc.*, 738 F.2d 383, 387 (10th Cir. 1984). In analyzing a claim for unlawful retaliation in violation of the FLSA, courts apply the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Richmond v. ONEOK, Inc.*, 120 F.3d 205 (10th Cir. 1997). Accordingly, the plaintiff must establish a prima facie case by showing that (1) he or she engaged in activity protected by the FLSA; (2) he or she suffered adverse action by the employer subsequent to or contemporaneous with such employee activity; and (3) a causal connection existed between the employee's activity and the employer's adverse action. *Conner v. Schnuck Markets, Inc.,* 121 F.3d 1390, 1394 (10th Cir. 1997). If a prima facie case is established, then the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. *Id.* "The defendant need not prove the absence of retaliatory motive, but only produce evidence that would dispel the inference of retaliation by establishing the existence of a legitimate reason. If evidence of a legitimate reason is produced, the plaintiff may still prevail if [he] demonstrates the articulated reason was a mere pretext for discrimination. The overall burden of persuasion remains on the plaintiff." *Id.* at 1395 (citing *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir. 1982) (internal alterations omitted)).

It is undisputed that the filing of Plaintiff's FLSA Complaint was protected activity under § 215(a)(3) and that the suspension and termination of Plaintiff's employment constituted adverse action, satisfying the first two prima facie elements. However, Defendant contends Plaintiff cannot satisfy the third element because the adverse actions taken against Plaintiff were unrelated to the filing of his FLSA claim. The Tenth Circuit has "characterized the showing required to

satisfy the third prong under a retaliation theory to be a showing of bad intent or 'retaliatory motive' on the part of the employer." *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007) (citing *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006) (quotation omitted)). "The causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Love*, 738 F.3d at 386 (citing *Burrus v. United Tel. Co.*, 683 F.2d 339, 343 (10th Cir.), *cert. denied*, 459 U.S. 1071 (1982)). "A retaliatory motive may be inferred when an adverse action closely follows protected activity." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (internal citation omitted). "However, unless the termination is *very closely* connected in time to the protected activity the plaintiff must rely on additional evidence beyond temporal proximity to establish causation." *Id.* "[W]hile retaliatory intent may be inferred from adverse action which 'closely followed' the plaintiff's protected activity, 'the phrase 'closely followed' must not be read too restrictively where the pattern of retaliatory conduct begins soon after the filing of the FLSA complaint and only culminates later in actual discharge.'" *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (quoting *Marx v. Schnuck Mkts.*, 76 F.3d 324, 329 (10th Cir. 1996)).

Several months passed between the filing of Plaintiff's Complaint and his termination; therefore, the temporal proximity of Defendant's adverse actions may not be enough, standing alone, to satisfy the "causal connection" prong. *See Anderson*, 181 F.3d at 1179 (noting that while "a one and one-half month period between protected activity and adverse action may, by itself, establish causation[,] . . . a three-month period, standing alone is insufficient to establish causation") (internal citations omitted). However, it is undisputed that the investigation leading to Plaintiff's suspension and termination began within one month of the filing of Plaintiff's FLSA

9

complaint. Plaintiff has also shown additional evidence of causation: (1) Bradley's testimony that Plaintiff's FLSA lawsuit "opened up some other doors that need to be settled," (2) Bradley's admission that, without the FLSA Complaint, the City would not have been looking into Plaintiff's conduct from years prior, and (3) Hall's awareness of Plaintiff's outside employment at the time. These circumstances together satisfy Plaintiff's prima facie burden on the "causal connection" element. The burden therefore shifts to Defendant to show a legitimate, non-discriminatory reason for the adverse employment actions.

Defendant contends that Plaintiff violated multiple City policies by using City equipment for his process-serving business and by serving papers while on duty and in uniform. Defendant notes that Plaintiff was afforded a due process hearing and the panel majority recommended termination for reasons unrelated to any FLSA issue. Plaintiff admits certain findings made by the hearing panel, including that: (1) Plaintiff used a marked City vehicle while on duty to perform private process-serving duties for profit; (2) Plaintiff performed outside work as a process server while in possession of a firearm and dressed in the uniform of an on-duty Fire Marshal; and (3) without permission, Plaintiff used City equipment to print documents relating to his process-serving business. Plaintiff contends that any violations of City policy occurred between two and four years prior to his FLSA Complaint and had no negative impact on Plaintiff's job performance. However, the Court finds that Defendant has met its burden to show a legitimate, non-discriminatory reason for initiating disciplinary action because it is undisputed that Plaintiff violated City policies in effect at the time. Accordingly, the burden shifts back to Plaintiff to show that Defendant's stated reasons are a pretext for retaliation.

The relevant inquiry as to pretext "is whether a reasonable factfinder could rationally find the employer's rationale unworthy of credence and hence infer that the employer did not act for

the asserted non-retaliatory reasons." *Lounds v. Lincare*, 812 F.3d 1208, 1234 (10th Cir. 2015). "A plaintiff can demonstrate pretext by showing 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's . . . .reasons for its action,' which 'a reasonable factfinder could rationally find . . . unworthy of credence.'" *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (citing *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)).

It is undisputed that Hall, the Deputy Chief, was aware of Plaintiff's outside employment at the time when he worked as a process server, but Hall did not raise any concerns regarding that issue. Only after Plaintiff filed his FLSA Complaint did the City begin investigating whether Plaintiff's outside work violated any policies. The Court also notes that, contrary to its practices in most previous cases, Defendant failed to notify Plaintiff of the investigation or to interview him. Additionally, other Fire Department employees engaged in outside employment while on duty and faced no discipline.[3] These facts further support a reasonable inference of retaliatory motive. *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1232 (10th Cir. 2000) (holding that a plaintiff may show pretext "on a theory of disparate treatment by providing evidence that he was treated differently from other similarly-situated, non-protected employees who violated work rules of comparable seriousness"); *Bowe v. SMC Elec. Prods.*, 935 F. Supp. 1126, 1136-37 (D. Colo. 1996) (finding genuine issue of fact concerning motive based on "manner in which [employee] was singled out to redo previously submitted records," together with other circumstances suggesting retaliatory motive); *cf. Conner*, 121 F.3d at 1398 (noting district court's finding that

---

[3] Defendant admits Plaintiff's Statement of Undisputed Fact ¶ 55, which states that "after receiving credible information from Smith about Fire Department employees who also performed outside work while on duty and/or used City equipment to perform outside work, the City conducted a cursory investigation, interviewing only three (3) employees, and inexplicably concluding that their use of City equipment and/or performance of outside work while on duty was 'acceptable.'" (Docs. 48, 52).

11

plaintiff failed to point to any specific instances of other employees engaging in same conduct for which he was fired, that employer knew of any such conduct by other employees, or that employer treated other employees differently if it discovered such violations).

Defendant argues in a conclusory fashion that Plaintiff failed to point to a comparable violation by another employee. However, there is sufficient evidence to raise a genuine question as to whether Plaintiff was treated differently than other employees. Additionally, Plaintiff had no previous disciplinary history and had received strong performance evaluations over more than twenty years with the Fire Department. The record evidence, with reasonable inferences in Plaintiff's favor, could support a reasonable inference that Defendant's proffered reasons for terminating Plaintiff are pretextual, making summary judgment improper as to Plaintiff's retaliation claim.

## IV. Plaintiff's Motion for Partial Summary Judgment

Plaintiff contends the undisputed facts demonstrate that the City engaged in unlawful retaliation in violation of the FLSA and he is entitled to summary judgment on his FLSA retaliation claim. Plaintiff has satisfied his prima facie burden and has produced sufficient evidence for a jury to consider whether Defendant's proffered reasons for its actions are pretextual. The relevant question for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that [Plaintiff] must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

As set forth above, Defendant has offered evidence that it had legitimate, non-discriminatory grounds for suspending and terminating Plaintiff. Plaintiff admits some, but not all, of the pre-determination hearing panel's findings regarding his work as a process server. However, Plaintiff contends that, because he had ceased his process-serving work before the

investigation started, the City's actions evidence a retaliatory motive. Plaintiff cites testimony by Wood that the purpose of the City's disciplinary policy is to correct behavior, rather than to punish when an employee has already done so. (Wood Tr. at 67-68, Doc. 48-11.) Plaintiff also contends the City has offered shifting explanations for instituting discipline and disputes that the policies cited by Defendant were in effect at the time of the conduct cited as the basis for his termination.

Plaintiff has raised numerous issues that a reasonable jury could determine support a finding that Defendant's stated reasons for its actions are pretextual. However, Plaintiff admits that some of his conduct did violate applicable City policy regarding the use of City vehicles and equipment. Additionally, Defendant provided Plaintiff with reasons for its recommendations and a pre-determination hearing in which Plaintiff was allowed to participate. Thus, while Plaintiff has illustrated that significant factual disputes exist that are material to pretext, he has not shown that Defendant's proffered reasons are pretextual as a matter of law. Instead, the Court finds the evidence should be weighed by a jury to determine his retaliation claim. Accordingly, summary judgment is not warranted.

**V.  Conclusion**

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 46) and Plaintiff's Motion for Partial Summary Judgment (Doc. 48) are **denied**.

**SO ORDERED** this 2nd day of July, 2019.

_____
JOHN E. DOWDELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT